McKEE, Circuit Judge,
dissenting:
Plaintiffs seek to enforce regulations promulgated under § 602 of Title VI of the Civil Rights Act of 1963, 42 U.S.C. § 2000-1. The validity of those regulations is not in dispute here. The regulations are set forth at 40 C.F.R. § 7.10 et seq. and require the defendants to consider the potentially adverse disparate impact of air permits that St. Lawrence needs to operate the proposed facility.[1]
The majority’s decision to reverse the district court’s grant of preliminary injunc-tive relief is based upon my colleagues’ conclusion that the district court erred “as a matter of law ... in finding that plaintiffs are likely to succeed on the merits of their claim.” Maj. Op. at 790. However, our review here ought to be limited to determining if plaintiffs have established “a reasonable probability of succeeding on the merits....” ACLU v. Reno, 217 F.3d 162, 173 (3d Cir.2000) (emphasis added). We need look no further than our recent decision in Powell v. Ridge, 189 F.3d 387 (3d Cir.) cert. denied, 528 U.S. 1046, 120 S.Ct. 579, 145 L.Ed.2d 482 (1999) to find the answer to that question. The majority correctly notes that the Supreme Court’s subsequent decision in Alexander v. Sandoval, 531 U.S. 1049, 121 S.Ct. 652, 148 L.Ed.2d 556 (2000), overruled part of our holding in Powell. However, Powell was not overruled in its entirety until today. Ironically, the majority overrules Powell by engaging in an analysis that overreads Sandoval while cautioning that “Powell, ... should not be overread.” Maj. Op. at 784. Accordingly, I respectfully dissent from the decision of my colleagues.
I.
Before beginning my discussion I think it is important to define the parameters of our inquiry. First, “we must affirm unless we find the [district] court abused its discretion, committed an obvious error of law, or made a serious mistake in considering proof.” Bill Blass, Ltd. v. SAZ Corp., et al, 751 F.2d 152, 154 (3rd Cir.1984) (emphasis added). Our analysis is not driven by factual issues. Accordingly, our inquiry turns on whether the district court committed an “obvious error of law.” If it committed such an error, it abused its discretion in granting preliminary relief. If it did not commit such an error, preliminary relief was appropriate, and we must affirm. Second, there is no issue about the validity of the applicable regulations enacted pursuant to 42 U.S.C. § 602. The majority assumes they are valid, just as the Supreme Court did in Sandoval. Third,
it has long been the rule in this Circuit that decisions made in similar cases by *792 panels of this Court are binding on other panels .... [i]t is only through the Court En Banc that precedents established by earlier [published] panel decisions may be reexamined.
In the Matter of The Central Railroad Co. of New Jersey, 485 F.2d 208, 210 (3rd Cir.1974). See also Reich v. D.M. Sabia Co., 90 F.3d 854 (3rd Cir.1996).
The majority concludes that the plaintiffs’ action here is “legally insufficient” and that the district court therefore erred in granting preliminary injunctive relief, Maj. Op. at 777, because the disparate impact regulations plaintiffs seek to enforce are “too far removed from Congressional intent to constitute a ‘federal right’ enforceable under § 1983.” Id. at 790. Based upon that analysis, the majority concludes that plaintiffs have no reasonable probability of success on the merits and are therefore not entitled to injunctive relief. This analysis not only ignores controlling precedent, it overrules it.
II.
42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.
Section 601 of Title VI provides:
No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjeet-ed to discrimination under any program or activity receiving Federal financial assistance.
42 U.S.C. § 2000d. The Supreme Court has held that § 601 only reaches intentional discrimination. See Sandoval, 121 S.Ct. at 1516. However, § 602 authorizes federal regulatory agencies to promulgate regulations under Title VI.
Section 602 provides, in relevant part: Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 2000d [Section 601] of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing financial assistance in connection with which the action is taken.
Id. § 2000d-1. The regulations at issue here were promulgated under § 602 and they proscribe discrimination that results from the disparate impact of certain activity. The Environmental Protection Agency is not alone in promulgating disparate-impact regulations under § 602. In Powell we noted that “[a]t least 40 federal agencies have adopted regulations that prohibit disparate-impact discrimination pursuant to this authority.” 189 F.3d at 393.
We held in Powell, that the plaintiffs there could maintain an action under § 1983 to enforce disparate impact regulations promulgated under § 602 by the Department of Education that are virtually identical to the regulations promulgated by the Environmental Protection Agency that are at issue here.[2] Plaintiffs in Powell *793 brought an action against state officials challenging the funding mechanism for public education. They alleged, inter alia, that the defendants’ method of funding education in the Commonwealth of Pennsylvania had a racially discriminatory impact in violation of Title VI and its implementing regulations.
The district court dismissed the complaint based upon its conclusion that the plaintiffs did not “adequately allege that a specific element of the Commonwealth’s funding practices adversely and disproportionately affects students of a particular race.” 189 F.3d at 393. On appeal, the defendants asserted an alternative ground for upholding the district court. They argued that the Title VI regulations did not provide an enforceable right. We resolved that inquiry by applying the four prong test established in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and a similar inquiry set forth in Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939 (3d Cir.1985). See Powell, 189 F.3d at 397 (“It is by now well established that implication of a private right of action for a statute requires analysis of the factors set forth in Cort v. Ash.”). We concluded that Title VI afforded plaintiffs a right to enforce the prohibition against disparate impact discrimination contained in the regulations promulgated pursuant to § 602 of Title VI. We stated:
The regulation at issue here, although promulgated by the Department of Education under 602 of Title VI, implements § 601 of Title VI. The Supreme Court precedent and our cases firmly establish that § 601 of Title VI gives rise to an implied right of action, at least for our purposes for securing injunctive relief.
189 F.3d at 399. We also concluded that the remaining prongs of the relevant inquiry were satisfied and held that plaintiffs had therefore established “an implied private right of action to enforce the regulations promulgated under 602 of Title VI.” Id. There is no question that that portion of our holding can not stand after the Supreme Court’s pronouncement in Sandoval. That was the precise issue addressed in Sandoval and Powell was rendered a dead letter as to that issue. However, that was also the only issue decided in Sandoval. The Court’s holding did not address Count II of the complaint that was before the court in Powell.
In Powell, we explained: “[plaintiffs’ second count invokes one of the Civil Rights Acts, 42 U.S.C. § 1983 to address the defendants’ alleged violation of the regulation.” Id. We concluded that inasmuch as the complaint sought only injunctive and declaratory relief defendants were “persons acting under color of state law” under § 1983. Id. at 401. We then cited Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) in stating that “once a plaintiff has identified a federal right that has allegedly been violated, there arises a rebuttable presumption that the right is enforceable under § 1983.’ ” 189 F.3d at 401. Inasmuch as the relevant statute did not explicitly foreclose a suit under § 1983, and since that statute clearly lacked a “comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983,” we concluded that plaintiffs could maintain an action to enforce the provisions of the regulations promulgated under § 602 by resorting to § 1983. We stated simply, “we see no reason to hold that resort to § 1983 has been foreclosed here.” Id. at 402.
The majority seizes upon that articulation of our holding to minimize the effect of what we said. My colleagues state: *794 “Powell did not analyze the foundation issue that is central here, ie. whether a regulation in itself can create a right enforceable under section § 1983. In Powell we seemed simply to assume for section 1983 purposes that it could.” Maj. Op. at 784-85. My colleagues then cite to Powell at 401 and note that we there stated, “Once a plaintiff has identified a federal right that has allegedly been violated, there arises a “rebuttable presumption that the right is enforceable under § 1983.’” Maj. Op. 785. I am frankly astounded by that analytical alchemy. The rebuttable presumption we referred to in Powell arises not because we “assumed” a cause of action under § 1983, but precisely because we held there was a cause of action under § 1983. See Blessing, 520 U.S. at 1359, 117 S.Ct. 1353. In Blessing, the Court was asked to determine if a plaintiff could enforce a right under § 1983. That was the issue, and it was the only issue. The Court stated, “We granted certiorari to resolve disagreement among the Courts of Appeals as to whether individuals may sue state officials under § 1983 for violations of Title IV D.” Id. at 339-40, 117 S.Ct. 1353. The Court began that inquiry by citing Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), wherein the Court had held that § 1983 provided a remedy for violations of federal rights, not federal laws. The Blessing Court could not have been clearer in stating: “[i]n order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal right, not merely a violation of federal law.” Blessing, 520 U.S. at 340, 117 S.Ct. 1353 (emphasis in original). The Court then applied the three factor test set forth in Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), to determine if plaintiff had established a federal right. In doing so, the Court noted that if plaintiff had established such a right, it would be enforceable under § 1983 unless Congress had foreclosed resort to § 1983 either in the text of the applicable statute, or the comprehensive nature of the relevant statutory scheme. Blessing, 520 U.S. at 340, 117 S.Ct. 1353. It is in this latter context that a presumption arises. Accordingly, there is a presumption that § 1983 is available once a federal right (as opposed to a violation of federal law) is established. The presumption is rebutted if a defendant can establish that Congress expressed its intent (explicitly, or implicitly through the statutory scheme), that the statute not be enforceable under the general rubric of § 1983.
It is true, as the majority notes, that much of our discussion in Powell was worded in terms of refuting defendant’s assertion that plaintiffs could maintain a cause of action. The majority notes: that “[Powell] merely rejected ... specific arguments. But Powell did not analyze the foundation issue that is central here, i.e. whether a regulation in itself can create a right enforceable under section 1983.” Maj. Op. at 784-85. That assertion can not withstand even a cursory reading of Powell. The fact that we “merely rejected” defendant’s arguments that § 1983 does not allow a private cause of action to enforce the regulations does not negate the fact that the result of refuting those arguments was that we found plaintiffs had a cause of action under § 1983, and that was part of our holding. The majority’s attempt to suggest the contrary is tantamount to arguing that “merely rejecting” the argument that 2 plus 2 does not equal 4 does not at the same time establish that 2 plus 2 does equal 4.
The sleight of hand that transforms our mention of a “presumption” in Powell into an assumption about the application of § 1983 is even more puzzling when one considers that the majority’s own analysis *795 states that the relevant presumption does not arise unless the plaintiff can establish a federal right has been violated. My colleagues quite correctly state: “If a plaintiff ... establishes and identifies a federal right that allegedly has been violated, a rebuttable presumption that the right is enforceable through section 1983 arises.” Maj. Op. at 779 (citing Blessing). Therefore, the majority clearly recognizes that Powell concluded that the plaintiffs there had a federal right, arising from the regulations promulgated under Title VI, and that the right could be enforced under § 1983 absent a demonstration that the cause of action was precluded by the text of Title VI, or the statutory scheme. We held that the defendants in Powell could not rebut the presumption. Moreover, the majority here correctly concedes that that was part of our holding in Powell, even while attempting to transform the holding into a mere assumption. See Maj. Op. at 776 (“In reaching its result the [district] court relied, inter alia on Powell v. Ridge, in which we held that there was a private right of action available to enforce a regulation implementing Title VI and that a disparate impact discrimination claim could be maintained under section 1983 for a violation of a regulation promulgated pursuant to section 602.”) (emphasis added); see also Maj. Op. at 784 (“We answered both questions in the affirmative, stating that section 602 and the Department of Education regulation at issue provided a private right of action, and that plaintiffs could utilize section 1983 to redress defendant’s alleged violation of the statute and regulation.”) (emphasis added). As noted above, it is clear that the first part of our holding in Powell does not survive Sandoval. However, that is simply not true of the second part of the holding. Sandoval never discussed the § 1983 issue.
In Sandoval, plaintiffs brought a class action against the Alabama Department of Public Safety in an attempt to enjoin the Department from administering drivers license examinations only in English. Plaintiffs alleged that administering the test in English to Spanish speaking residents had the effect of discriminating against them in violation of § 601 of Title VI. The Court began its analysis by stating that it was clear from, the Court’s own decisions, Congress’ amendments to Title VI, “and from the parties’ concessions that three aspects of Title VI must be taken as given.” 121 Sup.Ct. at 1516. These were that private individuals could sue to enforce the prohibition of intentional discrimination contained in § 601, that § 601 prohibits only intentional discrimination, and “we must assume for purposes of deciding this case that regulations promulgated under § 602 of Title VI may validly proscribe activities that have a disparate impact on racial groups, even though such activities are permissible under § 601.” Id. at 1516-17.
In writing for the majority and noting these three principles were taken as given, Justice Scalia observed that five justices of the Court had previously, in Guardians Association v. Civil Serv. Comm’n of New York City, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), voiced that latter principle “at least as alternative grounds for their decisions.” Sandoval, 121 S.Ct. at 1517. Justice Scalia noted that that position was “in considerable tension with the rule of Bakke[3] and Guardians that § 601 forbids only intentional discrimination .... ” Id. However, inasmuch as the plaintiffs in Sandoval had not challenged *796 the regulations and had asserted a claim only under § 601, the Court, “for the purposes of deciding this case” assumed that the regulations proscribing disparate impact discrimination “are valid.” Id. at 1517.
The question before the Court was, therefore, a very narrow one. The only issue was whether § 602 created a free standing private cause of action to enforce regulations precluding disparate impact discrimination. As noted above, that was the only question that the Court granted certiorari to review. The Court answered that narrow inquiry as follows:
“neither as originally enacted nor as later amended does Title VI display an intent to create a freestanding proper right of action to enforce regulations promulgated under § 602. We therefore hold that no such right of action exists.”
121 Sup.Ct. at 1523.
The majority seizes upon the “language of Sandoval,” to answer the very different inquiry posed by the district court’s injunction here. The majority does so even while noting that the Court in Sandoval cautioned that “this Court is ‘bound' by holdings, not language.’ ” Maj. Op. at 790 n. 12 (quoting Sandoval, 121 Sup.Ct. at 1517). The language of Sandoval, however, can not read an issue into that case that was not raised by the parties and not decided by the Court.
The issue here, simply stated, is whether § 1983 provides an independent avenue to enforce disparate impact regulations promulgated under § 602 of Title VI. That is the same question that was posed in Powell. We answered it in the affirmative in Powell, and the answer was not overturned by the subsequent holding in Sandoval. Powell therefore controls our inquiry here until overruled by the Supreme Court, or this court sitting en banc. See Central Railroad, 485 F.2d at 210. Clearly, the majority’s decision is not based on any determination of the en banc court. Just as clearly, it is not based upon the holding in Sandoval, or Powell.
The majority reasons that inasmuch as the Sandoval majority did not find the requisite Congressional intent for a private cause of action in the statute there can be no enforceable right under § 1983. See Maj. Op. at 791 (“Applying these rules here, it is clear that, particularly in light of Sandoval, Congress did not intend by adoption of Title VI to create a federal right to be free from disparate impact discrimination and that while the EPA’s regulations on the point may be valid, they nevertheless do not create rights enforceable under section 1983.”).
However,
This [an enforceable right under § 1983] is a different inquiry than that involved in determining whether a private right of action can be implied in a particular statute. In right of action cases we employ the four-factor Cort test to determine whether Congress intended to create the private remedy asserted for the violation of statutory rights. The test reflects a concern, grounded in separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes. Because § 1983 provides an alternative source of express congressional authorization ofpnvate suits, these separation-of-powers concerns are not present in a § 1983 case. Consistent with this view, we recognize an exception to the general rule that § 1983 provides a remedy for violation of federal statutory rights only when Congress has affirmatively withdrawn the remedy.
Wilder v. Virginia Hospital Assoc., 496 U.S. at 508 n. 9, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (emphasis added) (internal citations and internal quotation *797 marks omitted) (citing Sea Clammers, 453 U.S. at 19, 101 S.Ct. 2615.).
The majority in Sandoval did, in fact, apply the aforementioned Cort test for determining if a cause of action existed in the statute. The Court did not apply the Blessing test that is used under § 1983 analysis.[4] This fact alone should cause my colleagues pause before “overreading” Sandoval.
Moreover, if we are to discount Powell on the grounds that Powell only assumed plaintiffs there had an actionable § 1983 claim so too we must distinguish Sandoval — a case which is even one step more removed than Powell from the appropriate inquiry — as Sandoval did not even address § 1983 to begin with.
Although my colleagues recognize in a footnote that the four justices who dissented in Sandoval believed that litigants could still bring a § 1983 cause of action for violation of a Title VI disparate-impact regulation, the majority fails to give that fact the significance it deserves. See Maj. Op. at 779 n. 5. The dissenting justices responded to the majority’s conclusion that the plaintiffs in Sandoval could not bring a cause of action under Title VI by stating:
to the extent that the majority denies relief to the respondents merely because they neglected to mention 42 U.S.C. § 1983 and framing their Title VI claim, this case is something of a sport. Litigants who in the future wish to enforce the Title VI regulations against state actors in all likelihood must only reference § 1983 to obtain relief; indeed, the plaintiffs in this case ... presumably retain the option of rechallenging Alabama’s English-only policy in a eom-plaint that invokes § 1983 even after today’s decision.
Sandoval at 1527.
In reaching our second holding in Powell, we also noted that
Defendants’ argument conflicts with the Supreme Court’s own pronouncements. As previously noted, in Guardians five of the nine justices agreed that the administrative regulations incorporating a disparate impact standard are valid, see 463 U.S. at 584 n. 2, 607 n. 27, 103 S.Ct. 3221, 77 L.Ed.2d 866, and thereafter the Court in Alexander[5] characterized Guardians as so holding. See Alexander, 469 U.S. at 293, 105 S.Ct. 712 (“[Guardians] held that actions having an unjustifiable disparate impact on minorities could be redressed through agency regulations designed to implement the purposes of Title VI.”). Obviously, the Supreme Court did not believe that administrative regulations that prohibit disparate impact were an impermissible creation of substantive law, even though in its own earlier opinion in Guardians the Supreme Court had held that Title VI itself did not extend that far.
189 F.3d at 399-400.
Moreover, Supreme Court precedent affords additional support for the plaintiffs’ claim here. In Wright v. City of Roanoke Redevelopment & Hous. Auth., supra, the plaintiffs brought an action under § 1983 to enforce regulations that defined “rent” under the relevant statute. Defendants argued that the rights plaintiffs sought to enforce under § 1983 were too amorphous and vague to confer an enforceable right *798 under § 1983. In rejecting that argument the Supreme Court proclaimed that “[t]he regulations ... have the force of law.” 479 U.S. at 431, 107 S.Ct. 766.
The majority attempts to distance the instant inquiry from the analysis in Wright by arguing that the Court there first examined the relevant statute and concluded that the statute, itself, conferred the right plaintiffs were seeking to enforce under § 1983. Only upon making that determination, argues the majority, did the Court then conclude that the relevant regulations could properly define and flesh out the statutorily conferred right. The majority then concludes that, inasmuch as the relevant right here resides in the regulations, not Title VI, § 1983 can not independently afford the relief that Congress did not provide for in the controlling statute. Maj. Op. at 783.
It is true that the Court in Wright ordered its analysis as the majority suggests. However, the Court stated that the regulation had the force of law as part of its Blessing analysis. Significantly, the Court applied that analysis not to the provisions of the statute, but to the regulation itself. Accordingly, Wright is consistent with, and supports, the plaintiffs’ position here that the regulations themselves may give birth to a federal right so long as the regulations are valid.
In addition, the Supreme Court later interpreted Wright as finding an enforceable right in the interrelationship between the regulations and underlying statute. See Wilder, 496 U.S. at 511, 110 S.Ct. 2510 (“[I]n Wright, we found that the [statute] ... and its implementing regulations did create rights enforceable under § 1983.”). Cases that we decided before Powell reached the same conclusion. See Alexander v. Polk, 750 F.2d 250 (3d Cir.1984).
In Polk, we concluded that the regulation at issue created an enforceable right. See Polk, 750 F.2d at 259 (“It is clear that 7 C.F.R. § 246.24 created an enforceable right on behalf of [plaintiffs] to be informed of the availability of fair hearings.”). The majority attempts to reconcile today’s opinion with Polk by stating that the right identified there could be “traced to and was consistent with the statute”. Maj. op. at 783. We ought not dismiss Polk so easily however, given our pronouncement in Powell. Although we did not cite Polk in Powell, we were clearly aware of the Polk analysis, and it is consistent with our result in Powell. Furthermore, although Polk was decided before Blessing, it is clear that the analysis in Polk is consistent with a Blessing analysis, and the focus upon congressional intent. See Polk, 750 F.2d at 259 (“The provision was intended to safeguard the legal rights of WIC beneficiaries by informing them of fair hearing procedures.”).
The regulations the South Camden plaintiffs are attempting to enforce can also be traced to Title VI. The majority focuses on the fact that § 601 proscribes only intentional discrimination. Nevertheless, disparate-impact regulations may very well reflect an agency’s practical considerations and definition of discrimination, just as “rent” was defined by the Department of Housing and Urban Development in the regulations in Wright. We cannot invalidate that regulatory definition without invalidating the regulations, and the majority claims that it is not doing that.[6]
Lastly, in keeping with the tendency to rely upon “language” that is favorable, and distinguish contrary pronouncements as “dicta,” the majority dismisses our decision in West Virginia Univ. Hospitals v. Casey, 885 F.2d 11 (3rd Cir.1989) as “dicta.” *799 Maj. op. at 784. In Casey, we interpreted Wright and Polk as standing for the proposition that regulations, as well as statutes, can create rights that are enforceable under § 1983. There we stated, “valid federal regulations as well as federal statutes may create rights enforceable under section 1983,” and we cited Wright, and Polk. 885 F.2d at 18. I readily concede that Casey involved only a statute, not regulations, and therefore, this statement was “dicta” just as the majority states. However, I think it noteworthy that my colleagues so readily dismiss statements from our own jurisprudence as “dicta” while relying upon dicta from cases that support its analysis and identifying the “dicta” as “teachings.” See Maj. Op. at 788-89 (“we follow Wright, in accordance with its actual holding, the teaching of Sandoval, and the holdings in Harris and Smith, which we believe the courts of appeals decided correctly”).
Of course, whether or not the plaintiffs would ultimately prevail on the merits is not the issue before us today. However, given controlling precedent in Powell I frankly fail to see how we can conclude that their chances of prevailing are anything less than reasonable. Moreover, their position has been adopted by our sister Court of Appeals for the Sixth Circuit. See Loschiavo v. City of Dearborn, 33 F.3d 548 (6th Cir.1994), (holding that regulations promulgated under the Cable Communications Policy Act of 1984 created a right which plaintiff could enforce under 42 U.S.C. § 1983, and relying upon Wilder, 496 U.S. at 520, 110 S.Ct. 2510 and Wright, 479 U.S. at 432, 107 S.Ct. 766). The reasonableness of the plaintiffs’ position is further underscored by the four dissenting justices in Sandoval. They noted:
the majority declines to accord prece-dential value to Guardians because the five justices in the majority were arguably divided over the mechanism for which private parties might seek such injunctive relief.
121 S.Ct. at 1527.
Conclusion
Accordingly, for the reasons set forth herein, I respectfully dissent from the decision of the majority. I do readily concede that, given the pronouncements in Sandoval, the majority’s opinion here has some force. However, the majority’s opinion can not withstand scrutiny given Powell, as well as other cases that were not overruled by Sandoval. I believe that the district court was clearly correct in concluding that plaintiffs can demonstrate a “reasonable probability of success” on the merits.[7]

. The regulation at issue in Powell was codified at 34 C.F.R. § 100.3(b)(2) and it prohibited recipients of applicable federal funds from *793 "utilizing criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color,....” 189 F.3d at 393.

. Referring to Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978).

. Blessing requires, as its first element, that "Congress must have intended that the provision in question benefit the plaintiff.” Blessing, 520 U.S. at 340, 117 S.Ct. 1353. The Sandoval Court, on the other hand, asked in its private right of action inquiry, "whether it [section 602] displays an intent to create not just a private right but also a private remedy.” Sandoval, 121 S.Ct. at 1519.

. Referring to Alexander v. Choate, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

. Although the majority snipes at the disparate-impact regulations, my colleagues concede they are valid for purposes of the instant analysis.

. Inasmuch as the majority's analysis is limited to the first prong of the four part test for upholding a preliminary injunction I have not discussed whether plaintiffs have shown that they will be irreparably harmed by the denial of relief, whether granting the preliminary relief will result in even greater harm to the defendants or whether granting preliminary relief will be in the public interest. See Allegheny Energy Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir.1999) citing ACLU v. Black Horse Pike Regional Bd. Of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir.1996) (en banc).